# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 23-cv-2861 (RC/RMM) |
| | ) |
| JOHN DOE, | ) |
| *Subscriber IP address 108.31.189.8* | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

This case arises from the alleged illegal download and distribution of adult films to which

Plaintiff Strike 3 Holdings, LLC ("Strike 3") owns the copyright.  Defendant is currently

unknown, except as the subscriber of the IP address 108.31.189.8 ("the IP address"), used to

download Strike 3's copyright materials.  To identify this subscriber, Strike 3 has filed a Motion

for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference ("Motion").  *See*

ECF No. 6.  Strike 3 specifically seeks discovery from Verizon Fios,[1] the Internet Service

Provider ("ISP") that provides internet service to the IP address.  *See* Mem. of P. & A. in Supp.

of Pl.'s Mot. for Leave to Serve a Third-Party Subpoena Prior to a R. 26(f) Conference at 1, ECF

No. 6-1 ("Pl.'s Mem.").  With this subpoena, Strike 3 seeks the name and address of the

subscriber of the IP address to thereby identify Defendant John Doe.  *Id.* at 1–2.  After

considering the Motion, the pleadings, and relevant law, the Court **GRANTS** Strike 3 leave to

---

[1] Plaintiff refers to Defendant's ISP as "Verizon Fios" in both its Complaint and briefing on the present motion.  *See* Compl. ¶ 5; Pl.'s Mem. at 1.  Accordingly, the Court assumes without deciding, for purposes of this Memorandum Opinion, that "Verizon Fios" is the appropriate corporate entity to receive a subpoena.

serve its third-party subpoena but **DENIES WITHOUT PREJUDICE** Strike 3's request for a protective order.  Subject to the procedure described below, Strike 3 may serve a subpoena on Verizon Fios to obtain the name and address of the subscriber associated with IP address 108.31.189.8.

## BACKGROUND

Strike 3 is an adult media company based in Delaware.  *See* Compl. ¶¶ 2, 11.  As Strike 3's content is frequently subject to piracy, the company developed a scanner with the purpose of identifying individuals who infringe on Strike 3's copyrighted content.  *See* Compl. ¶¶ 16, 27–28.  With this scanner, Strike 3 established that Defendant downloaded and distributed twenty-six of Strike 3's copyrighted motion pictures, using IP address 108.31.189.8, in violation of the Copyright Act.  *See* Compl. ¶¶ 4–6, 28, 43–44; Decl. of Patrick Paige, ECF No. 6-3 ("Paige Decl.") ¶ 18.

Strike 3 has been unable to identify Defendant by name because only ISPs possess the subscriber information necessary to link an individual customer to his or her IP address.  *See* Paige Decl. ¶ 28.  Strike 3 now seeks leave to obtain expedited discovery from Verizon Fios, the ISP for the IP address.  *See* Pl.'s Mem. at 1.  Specifically, Strike 3 proposes to serve a Rule 45 subpoena to discover the name and address of the subscriber of the IP address so that it may further investigate—and prosecute—its claims.  *Id.* at 2.  Strike 3 represents that it will only use the information obtained to prosecute the claims brought in its Complaint and would consent to a protective order to allow the Defendant to proceed anonymously.  *See id.* at 2, 9–10.

## LEGAL STANDARD

### I.   Request for Discovery Prior to Rule 26(f) Conference

Unless authorized by court order, no party may seek any discovery prior to a Rule 26(f) conference.  *See* Fed. R. Civ. P. 26(d)(1); *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203,

1207 (D.C. Cir. 2020).  Such an order is the "only potential avenue for discovery" in cases in which information from a third party is necessary to identify possible defendants.  *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).

To obtain discovery at that stage, a plaintiff must "have at least a good faith belief that [expedited] discovery will enable it to show that the court has personal jurisdiction over the defendant."  *Id.*  After this requirement is met, courts in this Circuit traditionally have permitted expedited discovery if the plaintiff has established good cause to obtain the discovery.  *See Malibu Media, LLC v. Doe*, 64 F. Supp. 3d 47, 49 (D.D.C. 2014) (citing *Warner Bros. Records Inc. v. Does 1–6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) ("[T]he Court finds that plaintiffs have made a showing of good cause for the discovery they seek.")); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6–7 (D.D.C. 2008) (noting the "overwhelming" number of cases where plaintiffs sought to identify "Doe" defendants and courts "routinely applied" the good cause standard to permit discovery).  However, the D.C. Circuit has clarified that a court's analysis of whether to permit discovery must be grounded in the framework of Rule 26(b)—under which relevance and proportionality are the dispositive factors.  *See Strike 3 Holdings, LLC*, 964 F.3d at 1207 ("A district court's discretion to order discovery, whether before or after the parties have conferred, is cabined by Rule 26(b)'s general limitations on the scope of discovery."); *In re Clinton*, 973 F.3d 106, 114 (D.C. Cir. 2020) (citing *Strike 3* for same proposition).  The D.C. Circuit declined to expressly determine "whether the 'good cause' standard continues to apply under the current version of Rule 26."  *Strike 3 Holdings*, 964 F.3d at 1207 n.2.  However, given that Rule 26 does not currently incorporate a good cause standard,[2] the Court will evaluate Strike

---

[2] The good cause standard appears to stem from the pre-2015 version of Rule 26(b)(1), which allowed courts to order discovery of relevant matters "for good cause."  Fed. R. Civ. P. 26(b)(1) (2015); *see AF Holdings*, 758 F.3d 990, 995 (D.C. Cir. 2014) (noting that discretion to

3's Motion by assessing the relevance and proportionality of the proposed discovery.  *See generally Goodwin v. D.C.*, No. 21-cv-806, 2021 WL 1978795, at *3 n.1 (D.D.C. May 18, 2021) (conducting Rule 26 relevance and proportionality analysis to evaluate request for early discovery instead of applying "good cause" standard).

## II.    Motion for Protective Order

Federal Rule of Civil Procedure 26(c) permits the Court, upon a showing of "good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see also Huthnance v. D.C.*, 255 F.R.D. 285, 296 (D.D.C. 2008) ("[G]ood cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense.") (quoting *Fonville v. D.C.*, 230 F.R.D. 38, 40 (D.D.C. 2005)).  Protective orders may also be used to "limit the manner in which . . . confidential information is to be revealed."  *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006).  The party requesting the protective order generally bears the burden of showing good cause "by demonstrating specific evidence of the harm that would result."  *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 274–75 (D.D.C. 2001); *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). Nonetheless, trial courts have broad discretion to issue and set the terms of a protective order and may do so *sua sponte*.  *See Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984); *Keaveney v. SRA Int'l, Inc.*, No. 13-cv-00855, 2017 WL 1842544, *2 (D.D.C. May 3, 2017); *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 587 (D.D.C. 1982).

---

order expedited discovery is "cabined by Rule 26(b)(1)'s general requirements that a discovery order be '[f]or good cause' and relate to a 'matter relevant to the subject matter involved in the action.'").  However, the 2015 amendments to Rule 26(b) replaced the good cause standard and made relevance and proportionality the touchstones for permitting discovery.  *See* Fed. R. Civ. P. 26(b)(1); *In re Clinton*, 973 F.3d at 114 n.2 (discussing changes to Rule 26).

**DISCUSSION**

**I.   The Proposed Discovery Is Both Relevant and Proportional to Strike 3's Copyright Infringement Claims**

The Federal Rules of Civil Procedure allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016).  When addressing proportionality, courts must consider six factors: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "[N]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional."  *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

*A.   Relevance*

The name and address of the subscriber associated with the IP address 108.31.189.8 is relevant because it will help Strike 3 identify the John Doe Defendant.  *See Strike 3 Holdings, LLC*, 964 F.3d at 1210 ("It is well established that plaintiffs are permitted to proceed against John Doe defendants so long as discovery can be expected to uncover the defendant's identity.").  Strike 3 cannot prosecute its claims without knowing the identity of the alleged infringer, and therefore the information it seeks to obtain from Verizon Fios clearly "bears directly on," and is relevant to, Strike 3's claim.  *Goodwin*, 2021 WL 1978795, at *4; *see generally Strike 3 Holdings, LLC v. Doe*, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019) (denying motion to

5

quash subpoena served to identify a potential infringer and noting that "Plaintiff needs the subscriber information to conduct a good faith investigation").  Although the subscriber of the IP address may not be the infringer, at this stage, Strike 3 need only demonstrate that learning the subscriber's identity may help it identify the infringer.  *See Strike 3 Holdings*, 964 F.3d at 1210; *see also Arista Records*, 551 F. Supp. 2d at 8 (refusing to consider arguments that the subscriber associated with the IP address may not be the actual infringer when reviewing a motion to quash a subpoena served during expedited discovery)*.*

Further, Strike 3 has established a good faith belief that the infringer will be subject to the Court's personal jurisdiction.  Absent such a showing, "there is little reason to believe that the information sought will be 'relevant to the subject matter involved in the action,'" because "[t]he identity of prospective defendants who cannot properly be sued in this district can be of little use in a lawsuit brought in this district."[3]  *AF Holdings*, 752 F.3d at 995 (citing Fed. R. Civ. P. 26(b)(1)); *see also Strike 3 Holdings*, 964 F.3d at 166–67.  Strike 3's claims arise under the Copyright Act, 17 U.S.C. § 101 *et seq*., which "does not provide for the exercise of personal jurisdiction over alleged infringers on any basis."  *Malibu Media LLC v. Doe*, 177 F. Supp. 3d 554, 556 (D.D.C. 2016) (citing *Exquisite Multimedia, Inc.*, 2012 WL 177885, at *2).  Accordingly, this Court's personal jurisdiction over Defendant depends "on the reach of District of Columbia law."  *Id.*; Fed. R. Civ. P. 4(k)(1)(A).  District of Columbia law confers personal jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code

---

[3] Courts applying the good cause standard described this as a threshold issue that plaintiffs must prove before the Court determined whether to allow expedited discovery.  *See AF Holdings*, 752 F.3d at 996.  As that showing was tied to establishing the relevance of the proposed discovery, the Court addresses personal jurisdiction as part of the Rule 26(b) analysis, instead of as a separate threshold showing.

Ann. § 13-422.  In addition, the District of Columbia's long-arm statute provides, in relevant part, that a D.C. court may exercise personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code Ann. § 13-423(a)(3); *see also Nu Image, Inc. v. Does 1-23, 322*, 799 F. Supp. 2d 34, 38 n.3 (D.D.C. 2011) (noting that it is "well settled in this jurisdiction that a claim for copyright infringement sounds in tort").  Applying those principles to a copyright infringement case such as this, "the only conceivable way that personal jurisdiction might properly be exercised" over Defendant is if Defendant is a "resident[] of the District of Columbia or at least downloaded the copyrighted work in the District."  *AF Holdings*, 752 F.3d at 996; *see also Malibu Media, LLC*, 177 F. Supp. 3d at 557.

Using geolocation technology, Strike 3 has traced the IP address to the District of Columbia, thereby establishing a good faith belief that the Court has personal jurisdiction over the subscriber of the IP address.  *See* Compl. ¶¶ 8–9, 37–42, and Ex. A; *Malibu Media, LLC*, 2016 WL 1698263, at *2 (finding that an IP address "suffices to 'provide at least some basis for determining whether a particular subscriber might live in the District of Columbia'" and that using an IP address "is sufficient to demonstrate a good faith belief that the court has personal jurisdiction over the defendant").  The D.C. Circuit has recognized that "geolocation services" provide a reliable means to "estimate the location of Internet users based on their IP addresses."  *AF Holdings*, 752 F.3d at 996; *see also Nu Image*, 799 F. Supp. 2d at 40 ("Plaintiff can establish such a good faith basis for residence or personal jurisdiction by utilizing geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant.").  In addition, even if discovery reveals that the owner of

the IP address does not live in the District, there is still a good faith basis to believe that the

Court has personal jurisdiction over the Defendant because the same geolocation technology also

traced a substantial portion of Defendant's infringement ("tortious activity") to the District of

Columbia. *See* Compl. at ¶¶ 8–9; *Nu Image, Inc.*, 799 F. Supp. 2d at 41.  Therefore,

jurisdictional discovery to identify the Defendant is relevant.

### B.  Proportionality

The requested discovery is also proportional.  Strike 3 seeks to issue a narrow subpoena

directing Verizon Fios to provide the name and address of the individual or entity that was

associated with the IP address during the relevant time.  Given the importance of the issues at

stake, Strike 3's inability to pursue its claim without identifying the Defendant, and Strike 3's

inability to access the infringer's identity without the ISP's assistance, this minimally

burdensome subpoena is proportional to the case.

To determine the "importance of issues" in the proportionality analysis, courts must

consider "the significance of the substantive issues, as measured in philosophic, social, or

institutional terms." *Oxbow*, 322 F.R.D. at 7 (citing *Arrow Enter. Computing Solutions, Inc. v.*

*BlueAlly, LLC*, No. 5:15-CV-37, 2017 WL 876266, at *4 (E.D.N.C. Mar. 3, 2017)) (internal

citation and quotation marks omitted).  "'[C]ases in public policy spheres, such as employment

practices, free speech, and other matters,' which often 'seek[] to vindicate vitally important

personal and public values' and may have importance far beyond the monetary amount

involved'" typically are considered to implicate "important" issues. *Id.*  (citing Fed. R. Civ. P.

26 advisory committee's note) (alteration in original).  Strike 3's claim implicates important

property rights protected by the Copyright Act.  The Constitution itself provides the authority to

copyright in order "to stimulate artistic creativity for the general public good." *Twentieth*

*Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975); *see generally Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994) (discussing the societal value and competing interests inherent in copyright protection).  As such, a copyright holder is entitled to protect its interest in copyrighted work, regardless of its content.  *See Strike 3 Holdings, LLC*, 964 F.3d at 1210.  Identifying the infringer, so that the civil case may proceed, is essential for Strike 3 to vindicate its rights and thwart the large-scale piracy of its films.  Therefore, this factor weighs in favor of permitting expedited discovery.

The parties' relative access to the information also weighs in favor of permitting expedited discovery.  This factor focuses on "information asymmetry—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information."  *Oxbow*, 322 F.R.D. at 8.  Here the asymmetry is extreme—Strike 3 has no way to independently access the subscriber information for the IP address, whereas Verizon Fios should be able to readily retrieve the information from its records.  *See* Paige Decl. ¶ 28 (explaining that tracking the IP address connected with the infringement is the only lead Strike 3 has towards identifying the defendant); *BMG Rights Mgmt. (US) LLC v. Cox Comm'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) (noting "only the ISP can match the IP address to the subscriber's identity.").

When assessing the discovery's importance in resolving the issues, courts evaluate "whether '[t]he issues at stake are at the very heart of [the] litigation.'"  *Oxbow*, 322 F.R.D. at 8 (citations omitted).  Strike 3 cannot prosecute its case without identifying the John Doe Defendant but has no way to access the information on its own.  Thus, Strike 3 has a particularly strong need for expedited discovery.

The remaining factors also indicate that Strike 3's requested discovery is proportional.  It is difficult to ascertain the amount in controversy at this stage, but Strike 3 seeks statutory damages for each infringed work plus attorneys' fees and costs.  *See* Compl. ¶ 46.  In a similar case, Strike 3 sought the statutory minimum of $750 per infringed work.  *See Strike 3 Holdings LLC v. Doe*, No. 18-cv-1173, 2019 WL 1277561, *2 (N.D. Cal. Mar. 20, 2019).  If the same measure of damages is sought here, Strike 3 could recover up to $19,500 ($750 x 26), plus attorneys' fees and costs.  *See* Compl. ¶ 37 (noting the number of files "determined to be identical (or substantially similar) to a copyrighted work(s) that Plaintiff owns.").  The discovery appears to place a minimal burden and expense upon Verizon Fios, which need only search its records, which presumably are maintained electronically, to obtain the subscriber information.[4]

In sum, the proportionality factors, when balanced and applied to the facts Strike 3 has alleged, counsel in favor of permitting Strike 3 to conduct expedited discovery to attempt to identify the subscriber of the IP address.  Therefore, the Court finds that the proposed discovery satisfies Rule 26(b)(1).

## II. Although Strike 3 Has Not Demonstrated That a Protective Order Is Warranted, Temporary Restrictions on Disclosure Are Appropriate to Protect the Subscriber's Right to Seek Confidentiality

Strike 3 "encourages" the Court to issue a protective order establishing procedural safeguards, such as allowing Defendant to proceed anonymously.  Pl.'s Mem. at 9–10.  Courts in this District have issued protective orders in cases very similar to this one.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 17-cv-2347, 2018 WL 385418, at *2 (D.D.C. Jan. 11, 2018).  There

---

[4] Because proportionality is being analyzed here to determine whether to allow expedited discovery, the Court's analysis is necessarily limited to the information presented by Strike 3.  Verizon Fios may produce evidence in a motion to quash that would fundamentally alter the proportionality analysis, and this opinion should not be read as foreclosing that possibility.

may be grounds to shield the identity of the Defendant from public disclosure.  Strike 3 seeks

discovery related to a potentially sensitive topic—the alleged illegal downloading and

distribution of adult films.  Although Strike 3 was able to identify the IP address associated with

those downloads and trace it to the District of Columbia, it is theoretically possible that the

targeted subscriber is not the infringer.  *See Media Prods., Inc. v. Does 1-26*, No. 12-cv-3719,

2012 WL 2190613, at *1 (S.D.N.Y. June 12, 2012) (discussing risks that the infringer could be

"a third party who had access to the internet connection, such as a son or daughter, houseguest,

neighbor, or customer of a business offering an internet connection," and discussing the risks that

defendants might be falsely identified).  However, it is equally and arguably more plausible that

the Defendant is the infringer, and defendants charged with salacious conduct are not

automatically permitted to remain anonymous.  Indeed, the default presumption in federal courts

is that judicial records and proceedings will be publicly accessible, and parties may only proceed

anonymously if the court determines that the party's privacy interests "outweigh the public's

presumptive and substantial interest in knowing the details of judicial litigation."  *John Doe Co.

v. Consumer Fin. Prot. Bureau*, 321 F.R.D. 31, 34 (D.D.C. 2017).  Given the limited information

available at this stage of the litigation, it is premature to enter a protective order allowing the

Defendant, once identified, to remain anonymous.  Accordingly, the Court denies without

prejudice Strike 3's request for a protective order.

Once Defendant receives notice of the subpoena and this litigation, Defendant may well

assert an interest in anonymity that would warrant the issuance of a protective order.  Indeed,

Defendant is best situated to present such a request to the Court.  To avoid prejudicing

Defendant's ability to seek such an order in the future, the Court will restrict the disclosure of

Defendant's name and address for a limited period as explained below.  *See infra* Part III.

11

### III. Procedure Governing Expedited Discovery

For the foregoing reasons, the Court will permit Strike 3 to serve a Rule 45 subpoena upon Verizon Fios in order to obtain the identity of the individual associated with IP address 108.31.189.8.  The subpoena may seek identifying information including the individual's name and current and permanent address.  Strike 3 shall provide the ISP with a copy of this Memorandum Opinion and the accompanying Order with its subpoena.  Any information disclosed to Strike 3 in response to a Rule 45 subpoena may be used solely for the purpose of protecting Strike 3's rights as set forth in the Complaint and shall not be disclosed publicly, except as authorized below.

If and when the ISP is served with a subpoena, the ISP shall give written notice, which may include e-mail notice, to the subscriber in question at least fourteen (14) days prior to releasing the subscriber's identifying information to Strike 3.  If the ISP and/or Defendant would like to move to quash the subpoena, the party must do so before the return date of the subpoena, which shall be no earlier than forty-five (45) days from the date of service.  The ISP shall preserve any subpoenaed information, pending the resolution of any timely filed motion to quash.

If the Defendant wishes to proceed anonymously in this litigation, Defendant shall make that request through a motion for protective order.  Any such motion shall be filed within thirty (30) days of when Defendant receives written notice of the subpoena from the ISP.  The motion requesting anonymity may be filed under seal if it contains information identifying the Defendant.  If the motion is filed under seal, or is not filed electronically, Defendant shall serve a copy upon counsel for Strike 3.

To preserve Defendant's ability to seek a protective order, Strike 3 shall refrain from identifying Defendant's name on the public docket for a period of thirty (30) days after receiving

12

the subscriber's identifying information from the ISP.  On or before December 1, 2023, Strike 3 shall file a status report with the Court briefly outlining its progress, including providing an expected completion date of the discovery allowed by the accompanying Order and addressing whether Strike 3 has received any formal or informal requests for anonymity from Defendant.

### CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference, ECF No. 6, but **DENIES WITHOUT PREJUDICE** Plaintiff's request for a protective order.  A separate Order will accompany this Memorandum Opinion.

Date: October 17, 2023                            Signed: _____
                                                                  Robin M. Meriweather
                                                                  United States Magistrate Judge